Dirk O. Julander, Bar No. 132313
 *doj@jbblaw.com*
Catherine A. Close, Bar No. 198549
 *doj@jbblaw.com*
JULANDER, BROWN & BOLLARD
9110 Irvine Center Drive
Irvine, California 92618
Telephone:  (949) 477-2100
Facsimile:  (949) 477-6355

Attorneys for: Plaintiff AFFINITAS MEDIOS de PAGOS S.A.P.I. de C.V.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| AFFINITAS MEDIOS de PAGOS S.A.P.I. de C.V., a Mexican corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DOUG E. MERRYMAN, an individual; OPMNY, LLC, a Nevada limited liability company,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR**<br>1. Breach of Contract<br>2. Fraud and Deceit<br>3. Conversion<br>4. Accounting<br>5. Contractual Indemnity<br>6. Equitable Indemnity<br><br>**(Demand for Jury Trial)** |

## COMPLAINT

Plaintiff AFFINITAS MEDIOS de PAGOS S.A.P.I. de C.V. ("Plaintiff" or "Affinitas"), by and through its attorneys, hereby alleges the following for its Complaint against Defendant DOUG E. MERRYMAN ("Mr. Merryman") and OPMNY, LLC ("OPMNY"):

## THE PARTIES

1. Plaintiff Affinitas is a corporation duly organized and existing under and by virtue of the laws of Mexico.

2. Mr. Merryman is, and at all relevant times was, an individual residing in Pleasanton, Alameda County, California.

3. OPMNY is, and at all relevant times was, a limited liability company duly organized and existing under and by virtue of the laws of the State of Nevada and is doing business in Alameda County, California.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter under 28 U.S.C. Section 1332(a)(l) on the basis of diversity of citizenship, because the amount in controversy exceeds $75,000.00, the parties are citizens of different states, and there is an actual controversy between the parties.

5. Venue is proper in this Court under 28 U.S.C. Section 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district and Mr. Merryman resides in this district.

## FACTUAL BACKGROUND

6. Affinitas is what is known as an "acquirer" in the payments or credit card processing industry. Colloquially, an acquirer is known as a bank as it is authorized to "settle" or pay funds related to transactions from the consumers' banks for credit card, debit card, gift card and loyalty card purchases for payment to the merchants for their goods and services. In doing so, Affinitas essentially extends credit to its merchants, guaranteeing the transactions and taking on the risk of chargebacks initiated by consumers, which can be assessed as late as 12 months after the transaction.[1] To manage the risk of chargebacks, it is important for Affinitas to take on only high quality, low-risk merchants as clients.

7. OPMNY provides marketing, underwriting and settlement services to businesses such as Affinitas and provides a payment gateway through which merchants can process and monitor their transactions. Mr. Merryman is the majority owner and managing member of OPMNY. In his capacity as managing member of OPMNY, he controls all financial aspects of the business; including making payments to the merchants OPMNY brings to acquirers such as Affinitas.

---

[1] A chargeback is a credit card transaction that is returned by the issuer of the credit card after the customer complains about the transaction (for example, that the transaction was fraudulent or that the goods purchased never arrived).

8. In 2016, Mr. Merryman approached Affinitas with a business proposal whereby OPMNY would market Affinitas's processing platform, locate qualified merchants, ensure through underwriting and diligence that the merchants were low-risk merchants, monitor the merchant's transactions and perform all month-end functions for the merchants.

9. In connection with his proposal, in October, 2016, over the course of several meetings and telephone calls, Mr. Merryman expressly assured Affinitas' principals, Alfonso Peinado and Jacques Lebois, that OPMNY would only board low-risk merchants operating lawful businesses, and that no high-risk merchants would be boarded.[2]

10. In addition, in October, 2016, during these several meetings and telephone calls, Mr. Merryman expressly, assured Affinitas' principals, that OPMNY had the legal ability and appropriate licensing to aggregate merchant funds and to pay those funds directly to the merchants once funds were received from Mexico into the United States.

11. Based on these representations, on October 20, 2016, Affinitas entered into an Independent Contractor Agreement with OPMNY to market and sign up qualified merchants to Affinitas's processing platform and settle the merchants' accounts (the "Agreement").

12. Under the Agreement, OPMNY was responsible to locate merchants for credit card processing through Affinitas, underwrite the merchant accounts, performing due diligence on the merchants to ensure that they were legal businesses and not high-risk merchants, monitor the merchants' credit card transactions daily, and perform all month-end functions, such as statements, accounting and payments.

13. Under the Agreement, OPMNY was also responsible for "settling" the merchant's accounts. This means that, when processing funds were received, OPMNY was responsible for deducting processing fees and dues, ensuring that the merchant had sufficient funds in its reserve account,[3] and paying the remainder of the funds to the various merchants.

---

[2] When a merchant clears the underwriting process and its application for credit card processing is accepted, the merchant is "boarded" and a merchant account is opened for processing through Affinitas' platform.

[3] Acquirers such as Affinitas require that a portion of the funds do to the merchants be deposited into a reserve account for a period of time before releasing the funds to the merchants. The reserve money is held specifically to cover chargebacks and fees. The amount of the reserve is based on the nature of the merchant's business.

14. After processing for OPMNY's merchants for about 18 months, Affinitas began noticing a markedly high number of chargebacks from the merchants boarded through OPMNY, far in excess of the reserve account funds held for those merchants.

15. After incurring well over a million dollars in chargebacks beyond the merchants' reserves, Affinitas discovered that many of the merchants boarded by OPMNY to Affinitas' platform were indeed high-risk merchants, some of which were operating illegal businesses. One merchant in particular was investigated and shut down by the Federal government, leaving Affinitas holding the bag for more than $1,500,000 in chargebacks. Investigation is continuing, but Affinitas is informed and believes, and on that basis alleges, that the amount of chargebacks it will ultimately be financially responsible for due to Mr. Merryman and OPMNY's actions will exceed this amount.

16. Affinitas learned that OPMNY was performing little to no diligence on the merchants it boarded during the underwriting process. Notwithstanding, Mr. Merryman continued to represent to Affinitas that the merchants it boarded were "quality, low-risk merchants."

17. Further investigation revealed that Mr. Merryman had been siphoning money from the merchants' processing funds, transferring the remaining funds into an account owned by Affinitas, Inc., a US company Mr. Merryman controlled, and then paying the merchants directly from that account.

18. Affinitas' principals, Mr. Peinado and Mr. Lebois, formed Affinitas, Inc., in Delaware on Sept 28, 2018, when they needed a US company to do business with the Red Cross. Mr. Merryman convinced Mr. Peinado and Mr. Lebois to transfer 51% of Affinitas, Inc. to Mr. Merryman "for operational purposes." Shortly after the transfer, on March 17, 2018, Mr. Merryman presented the Stock Purchase Agreement (granting him the 51% interest) to Affinitas, Inc.'s bank and added himself as a signatory on the account. Thereafter, Mr. Merryman began running the merchant processing funds from Mexico to OPMNY and then through the Affinitas Inc. bank account.

19. After adding himself to the Affinitas, Inc. bank account, whenever processing funds were received by OPMNY from Affinitas, Mr. Merryman would siphon off a percentage of

the funds, deposit the remainder in the Affinitas, Inc. bank account, then purport to settle the merchant's transactions from that account, charging each merchant fees and dues in excess of the rates that should have been charged to the merchants under their respective Merchant Agreements with Affinitas.  Following this same practice, Mr. Merryman failed to pay the merchants' agents for their commissions on the sales.  As a result, a number of merchants and agents have filed or threatened to file lawsuits against Affinitas and OPMNY.  Investigation into the amounts improperly taken from the merchants and agents is continuing.  Affinitas is currently in the process of auditing each merchant's account and reimbursing the affected merchants for the amounts improperly taken by Mr. Merryman.  To date, Affinitas has reimbursed merchants in excess of $2,500,000.

20. Under the Agreement, OPMNY was obligated to split the fees earned on the credit card processing with Affinitas.  To date, OPMNY has failed and refused to account for or to pay the fees owed to Affinitas under the Agreement.  Affinitas is informed and believes, and on that basis alleges, that it is owed not less than $1,500,000 in unpaid fees.

21. The foregoing laundering, shuffling and comingling of credit card processing funds violates numerous card brand rules, as well as AML (Anti Money Laundering) and OFAC (Office of Foreign Asset Control) guidelines imposed by the Federal Government.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract Against Defendant OPMNY)

22. Plaintiff refers and incorporates by reference the allegations of paragraph 1 through 21 as though set forth fully herein.

23. The Agreement is a valid and binding contract.

24. Affinitas has performed all of its obligations under the Agreement, except as excused by law or OPMNY's breach.

25. In boarding merchants for processing through Affinitas's platform, OPMNY was required under to Section 1.03 of the Agreement to "…use only that form of Merchant Agreement that has been approved and supplied by AFFINITAS.  [OPMNY] shall not make any changes or modifications to any Merchant Agreement without the prior written consent of AFFINITAS."

26. Moreover, under the Agreement, OPMNY was responsible to ensure that the merchants it brought to Affinitas's for processing ran legitimate, lawful businesses and maintained sufficient funds in their reserve accounts to cover any chargebacks that its customers may make. Specifically, the Agreement provides:

> 1.04 <u>Acceptable Merchants</u>.  Independent Contractor shall market the AFFINITAS Services only to bona fide and lawful businesses and in accordance with AFFINITAS's and its vendors' policies, procedures and standards and this Agreement.  Further, Independent Contractor shall promptly notify AFFINITAS in writing of any adverse information that Independent Contractor receives relating to a Merchant, including information regarding a Merchant's financial condition or any other information relating to Merchant that would have a material effect on Merchant's ability to conform to the terms of its agreements.

27. OPMNY was also responsible under the Agreement to ensure that the funds were distributed accurately, that the correct fees were charged to the merchants on their transactions and that the remainder was properly distributed to the merchants.

28. In discharging its duties under the Agreement, OPMNY was bound pursuant to Section 1.07 of the Agreement to:

> … (i) conduct business in a manner that reflects favorably at all times on the AFFINITAS Services and the good name, good will and reputation of AFFINITAS; (ii) avoid deceptive, misleading or unethical practices that are or might be detrimental to AFFINITAS, the AFFINITAS Services or the public; [and] (iii) make no false or misleading representations with regard to AFFINITAS or the AFFINITAS Services …

29. Under Section 3.1 of the Agreement, OPMNY was to be paid a percentage of the revenue earned from fees on the merchant processing according the split set forth in Schedule A.

30. Most critically, Section 1.06 of the Agreement obligated OPMNY to perform its services in strict compliance with the rules and regulations established by the Card Brands (such as Visa, MasterCard, Discover and American Express) as well as all federal, state and local laws, rules and regulations governing credit card processing.

31. Within the past two years OPMNY breached the Agreement by:

  a. Creating its own applications for the merchants that OPMNY signed up which were never approved by Affinitas in violation of Section 1.03 of the Agreement;

b. Failing to conduct business in a manner that reflects favorably on Affinitas and to avoid deceptive, misleading or unethical practices that would be detrimental to Affinitas;

c. Failing to perform adequate underwriting or due diligence on the merchants OPMNY boarded and ultimately boarding high-risk merchants and merchants selling illegal goods or services resulting in excessive chargebacks;

d. Siphoning money from merchant processing funds and charging Affinitas's merchants fees and dues in excess of those Affinitas was contractually entitled to charge the merchants;

e. Failing and refusing to account for or to pay the percentage of fees owed to Affinitas under the Agreement; and

f. Transferring funds to merchant accounts without the proper registration or licensing and in direct violation of the rules and regulations established by the Card Brands and the laws, rules and regulations governing credit card processing.

32. As a result of OPMNY's fraud, gross negligence and breach, Affinitas has been damaged as follows:  1) Affinitas has incurred in excess of $1,500,000 in chargebacks from banks for the transactions run by the high-risk and illegal merchants that, but for OPMNY's gross negligence or fraud, should have never been boarded and that exceed the amounts held in reserve to cover such chargebacks; 2) Affinitas has had to pay merchants over $2,500,000 for money due but unpaid by OPMNY after it was siphoning money from merchant processing funds and charging the merchants fees and dues in excess of those Affinitas was contractually entitled to charge the merchants; and 3) Affinitas is informed and believes, and on that basis alleges, that it is owed not less than $1,500,000 for its percentage share of fees under the Agreement.

33. Accordingly, as a direct and proximate result of OPMNY's breached of the Agreement, Affinitas has been damages in an amount to be determined at the time of trial, but not less than $5,500,000.

34. In addition, based on its conduct alleged above, OPMNY is obligated under Section 5.02 of the Agreement to indemnify, defend and hold Affinitas harmless from any loss, liability,

damage or penalty caused by OPMNY transferring funds from Mexico into the United Sates to merchant accounts without the proper registration or licensing and in direct violation of the rules and regulations established by the Card Brands as well as federal, state and local laws, rules and regulations governing credit card processing, including the AML (Anti Money Laundering) and OFAC (Office of Foreign Asset Control) guidelines imposed by the Federal Government.

35. Pursuant to Section 4.03 of the Agreement, on September 13, 2018, Affinitas delivered written notice of OPMNY's breach and Affinitas's termination of the Agreement to OPMNY. The cure provisions of the Agreement are inapplicable to Affinitas's termination because OPMNY's default was of such a serious nature that a cure would be impossible.

36. Section 6.13 of the Agreement provides for the recovery of attorneys' fees and costs to the prevailing party in an action to enforce the terms of the Agreement. Accordingly, Affinitas is entitled to recover its attorneys' fees and costs in an amount to be ascertained according to proof.

## SECOND CLAIM FOR RELIEF

**(Fraud and Deceit Against Defendant Merryman)**

37. Plaintiff refers and incorporates by reference the allegations of paragraph 1 through 36 as though set forth fully herein.

38. As set forth above, in inducing Affinitas to enter into the Agreement with OPMNY, in October, 2016, over the course of several meetings and telephone calls, Mr. Merryman expressly assured Affinitas' principals, Mr. Peinado and Mr. Lebois, that OPMNY would only board low-risk (in his words "no-risk") merchants operating lawful businesses, and that no high-risk merchants would be boarded to Affinitas' processing platform.

39. At this same time, in October, 2016, during these several meetings and telephone calls, Mr. Merryman expressly, assured Affinitas' principals, that OPMNY had the legal ability and appropriate licensing to aggregate merchant funds and to pay those funds directly to the merchants once funds were received from Mexico into the United States.

40. On October 20, 2016, Mr. Merryman made the following express promises and representations in writing to Affinitas with respect to his performance of the Agreement:

     a. I will maintain the highest standards of professionalism and will comply with the company policy at all times.

     b. I will adhere to simple truth and integrity and will not engage in any misleading or deceptive sales practices.

     c. I will conduct due diligence and complete all site inspections truthfully. I will accurately report the nature of any business in which a prospective Merchant is engaged. I will promptly report to my appropriate manager or to the appropriate person at the office, any notice which I may receive of any Merchant's business which might expose the company to financial risk or if said business would be out of compliance with stated policies.

     d. I will quote all rates and charges consistent with AFFINITAS's guidelines.

     e. I will assure that all checks and/or payments are properly made out to the Agent company and not to me personally.

41. In reliance on Mr. Merryman's representations, on or about October 20, 2016, Affinitas entered into the Agreement.

42. Each of Mr. Merryman's promises and representations were false and were known by Mr. Merryman to be false at the time they were made. In reality, Mr. Merryman had no intention of complying with company policy, of acting with truth and integrity, of reporting a merchant's business which might expose the company to financial risk, of quoting rates and charges consistent with Affinitas's guidelines, and of properly making out checks and payments. Had Affinitas known that Mr. Merryman's intentions were not as represented, Affinitas would never have entered into the Agreement.

43. Mr. Merryman had no intention of boarding only low-risk merchants. Rather, Affinitas is informed and believes, and on that basis alleges, that he had a number of high-risk merchants and merchants operating unlawful business for which he was looking for an acquirer to process their transactions. Mr. Merryman never intended to perform any diligence and underwriting on these high-risk merchants.

44. Thereafter, Mr. Merryman concealed from Affinitas that OPMNY had boarded these high-risk merchants, concealed the true nature of the merchants' business and the financial and regulatory exposure to Affinitas.

45. Had Affinitas known that Mr. Merryman's representations as to the quality of the merchants he was bringing to Affinitas and the promise to perform diligence and underwriting were false, Affinitas would have never entered into the Agreement.

46. Had Affinitas known the true nature of the merchants' businesses, Affinitas would have terminated the Agreement and its relationship with OPMNY much sooner.

47. Mr. Merryman further concealed that he siphoned money from merchant processing funds, ran the remaining processing funds through the Affinitas, Inc. bank account without the appropriate licensing in violation of banking rules and federal laws, and charged the merchants fees and dues in excess of those Affinitas was contractually entitled to charge.

48. Had Affinitas known that Mr. Merryman was siphoning money from processing funds, violating banking rules and federal laws, and overcharging Affinitas's merchants, Affinitas would have terminated the Agreement and its relationship with OPMNY much sooner and would have immediately cut off Mr. Merryman's access to the processing funds and bank accounts.

49. As a direct and proximate result of Mr. Merryman's fraud and concealment, Affinitas has suffered damages in an amount to be determined at trial, but not less than $5,500,000.

50. Affinitas is informed and believes, and on that basis alleges, that in doing the acts described above, Mr. Merryman acted with malice and with specific intent to injure Affinitas. Affinitas therefore seeks an award of exemplary and punitive damages in an amount to be determined at the time of trial.

### THIRD CLAIM FOR RELIEF

**(Conversion/Embezzlement Against Defendant Merryman)**

51. Plaintiff refers and incorporates by reference the allegations of paragraph 1 through 50 as though set forth fully herein.

52. As set forth above, Mr. Merryman (who exclusively controlled the finances of OPMNY) concocted a scheme to enrich himself by siphoning money from Affinitas's settlement of processed transactions, failing to pay the appropriate revenue share to Affinitas, and diverting the siphoned funds to an account controlled by Mr. Merryman.

53. To date, the wire transfers reflecting the difference between the processing funds going into the OPMNY account and the settlement funds ultimately received by the merchants confirms that Mr. Merryman converted and diverted $2,500,000 in processing funds. In addition, Mr. Merryman has converted the portion of the settlement proceeds that OPMNY was required to pay Affinitas in the sum of $1,500,000.

54. Affinitas has demanded that Mr. Merryman return all monies improperly converted and diverted, but Mr. Merryman has failed and refused, and continues to fail and refuse, to comply with the demand.

55. As a direct and proximate result of the conversion, Affinitas has been damaged in the amount of $4,000,000

56. Plaintiff is informed and believes, and on that basis alleges, that in doing the acts described above, Mr. Merryman acted with malice and with specific intent to injure Affinitas. Affinitas therefore seeks an award of exemplary and punitive damages in an amount to be determined at the time of trial.

## FOURTH CLAIM FOR RELIEF

**(Accounting Against Defendant OPMNY)**

57. Plaintiff refers and incorporates by reference the allegations of paragraph 1 through 56 as though set forth fully herein.

58. As set forth above, Mr. Merryman has improperly converted and diverted merchant processing funds in violation of the Card Brand rules and regulations as well as state and federal payment card industry regulations and has embezzled funds due and owing to Affinitas.

59. As a result, an accounting of the books and records of OPMNY is necessary to determine the amount of funds improperly diverted.

**FIFTH CLAIM FOR RELIEF**

**(Contractual Indemnity Against Defendant OPMNY)**

60. Plaintiff refers and incorporates by reference the allegations of paragraph 1 through 59 as though set forth fully herein.

61. Section 5.02 of the Agreement requires OPMNY to indemnify Affinitas for "any loss, liability, damage, penalty or expense" it may suffer as a result of:

> … (i) any failure by [OPMNY or its agents] to comply with the terms of this Agreement; (ii) any warranty or representation made by the party being false or misleading; … (iv) the manner or method in which the party performs its services pursuant to this Agreement, (v) negligence of the party or its subcontractors, agents or employees, or (vi) any alleged or actual violations by the party or its subcontractors, employees or agents of any governmental laws, regulations or rules.

62. As set forth herein, Mr. Merryman's conduct has subjected Affinitas to liability to the merchants as well as liability to the Card Brands, banks and federal authorities. The extent of such liability is being investigated but is believed to exceed $5,500,000.

63. Based on the actions, inaction, omissions, and other wrongdoing of OPMNY and Mr. Merryman as described herein, and their breaches of duties owing directly or indirectly to Affinitas, OPMNY is liable, obligated and contractually required to indemnify and hold Affinitas harmless as and against any and all amounts that Affinitas, as the acquirer, has and may in the future be required to pay by way of penalties, costs, claims, judgments or compromises, together with any and all attorneys' fees and costs incurred in addressing or defending against such claims.

**SIXTH CLAIM FOR RELIEF**

**(Equitable Indemnity Against Defendant Merryman)**

64. Plaintiff refers and incorporates by reference the allegations of paragraph 1 through 63 as though set forth fully herein.

65. As set forth above, Affinitas's damages were actively, primarily and directly caused by Mr. Merryman's conduct, actions, inaction, omissions, and other wrongdoings.

66. Mr. Merryman owed a duty of care to Affinitas to ensure that the credit card processing and business activities he performed were lawful and not injurious to merchants, banks and the Card Brands, and in compliance with the laws of the United States.

67. Mr. Merryman breached his duties to Affinitas and any liability for such damages or injuries would arise, if at all, not as the result of any conduct, actions, inaction, omissions, or other wrongdoing on Affinitas's part but only by reason of the wrongdoing of Mr. Merryman.

68. By virtue of such conduct, actions, inaction, omissions, or other wrongdoing of Mr. Merryman, and his breaches of duties owing directly or indirectly to Affinitas committed thereby, Mr. Merryman is liable, obligated and required to defend, indemnify and hold Affinitas harmless as and against any and all amounts that Affinitas, as the acquirer, has or may in the future be required to pay by way of penalties, costs, claims, judgments or compromises, together with any and all attorneys' fees and costs incurred in addressing or defending against such claims.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as to all claims for relief for which it has a right to trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment on its Complaint as follows:

1. For general, special, compensatory and/or consequential damages against Defendants for all losses and damages suffered as a result of the wrongful acts described herein in the amount of at least $5,500,000;

2. For exemplary and punitive damages against Defendant Merryman in an amount according to proof at the time of trial;

3. For a complete verified accounting from OPMNY of all merchant processing funds received and paid out by OPMNY and an order of the Court directing the immediate disgorgement of all monies improperly diverted;

4. For a determination that OPMNY is required to defend and indemnify Affinitas under paragraph 5.02 of the Agreement from and against any and all amounts that Affinitas has and may in the future be required to pay by way of penalties, costs, claims, judgments or compromises, together with any and all attorneys' fees and costs incurred in addressing or defending against such claims arising from OPMNY's wrongful conduct.

1    5.   For a determination that Mr. Merryman is liable, obligated and required to defend, indemnify and hold Affinitas harmless from and against any and all amounts that Affinitas has and may in the future be required to pay by way of penalties, costs, claims, judgments or compromises, together with any and all attorneys' fees and costs incurred in addressing or defending against such claims arising from Mr. Merryman's wrongful conduct.

6.   For reasonable attorneys' fees and costs of suit incurred herein;

7.   For pre-judgment and post-judgment interest on the amount recovered at the highest legal rate from the earliest legal date; and

8.   For such other and further relief as the Court may deem just and proper.

DATED: September 13, 2018          JULANDER, BROWN & BOLLARD

By: _____
Dirk O. Julander
Catherine A. Close
Attorneys for Plaintiff AFFINITAS MEDIOS de PAGOS S.A.P.I. de C.V.